UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CLEON EDWARD MAJOR,

    Petitioner,

v.                                                  CASE NO. 5:18-cv-269-Oc-02PRL

WARDEN, FCC COLEMAN - LOW,

    Respondent.
_____/

# **O R D E R**

This cause comes before the Court on the Petition for Writ of Habeas Corpus (Dkt. 1) filed by Cleon Edward Major pursuant to 28 U.S.C. § 2241, and the response (Dkt. 29). After careful consideration of the submissions of the parties and the entire file, the Court concludes the petition should be denied.

## BACKGROUND

Cleon Major is a federal inmate who was housed at the Federal Correctional Institution Williamsburg, located in Salters, South Carolina, when he filed his petition. Dkts. 1, 1-2.[1] He is serving a 110-month term of incarceration imposed by the United States District Court in the Southern District of Florida. Dkt. 29-1

---

[1] Using his register number (00385-104), the BOP website shows that he is currently housed at "Coleman Low FCI." *See* https://www.bop.gov/inmateloc/, which was last visited on August 30, 2019.

at 4-5.  In July 2015, Mr. Major was disciplined by the Bureau of Prisons ("BOP").  *Id*. at 24-26.  He contends he did not commit the imposed disciplinary infraction and seeks to overturn the sanctions imposed.  Dkt. 1.  His current release date is calculated at February 6, 2021.[2]

Mr. Major properly filed this petition in his "district of confinement," which at the time was in the United States District Court for the District of South Carolina, Anderson/Greenwood Division.  *See* Dkts. 21, 23; *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *Meriweather v. Augustine*, No. 5:10-cv-236/RS/EMT, 2010 WL 5152979, at *1 (N.D. Fla. Nov. 22, 2010) (citing *Padilla*).  Once jurisdiction is properly acquired, "the petitioner's subsequent removal to another judicial district does not destroy the court's jurisdiction."  *Elcock v. Streiff*, 554 F.Supp.2d 1279, 1282 (S.D. Ala. 2008) (citing *Padilla*).  "[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian."  *Id*. (citing *Tang v. Gonzales*, No. 4:06cv277-MP/WCS, 2006 WL 3628061 (N.D. Fla. Aug. 18, 2006)); *see also Dotson v. United States*, No. CV 312-004, 2013 WL 1786568, at *1 n.1 (S.D. Ga. Mar. 7,

---

[2]  *See* https://www.bop.gov/inmateloc/.  At the time the Response was filed, his release date was February 6, 2020, based on good conduct time.  Dkt. 29-1 at 3.

2013) (transferring prisoner to other prison facilities does not defeat otherwise properly acquired jurisdiction) (citations omitted), *adopted by* 2013 WL 1786559 (S.D. Ga. Apr. 25, 2013).

In early 2018, Mr. Major filed a notice of change of address to the Federal Correctional Institution Coleman - Low (Coleman). Dkt. 18. The District Court of South Carolina held that it did not retain jurisdiction after the inmate was moved to another federal penitentiary and transferred the case to this Court. Dkts. 21, 23. In reaching this conclusion, the court noted conflicting law among the district courts in the Fourth Circuit. Dkts. 21 at 3 n.2, 23. Although Eleventh Circuit law supports the finding that the transferor court retained jurisdiction, this Court will not return the case but defer to the District Court of South Carolina's decision that it no longer has jurisdiction. Mr. Major is now within this district and this Court will consider the petition on the merits.

## THE BOP RECORD

### *Incident and Disciplinary Proceedings*

On July 5, 2015, Mr. Major was housed at the Federal Correctional Institution in Estill, South Carolina. Dkt. 29-1 at 7 ¶3, 9 ¶8. He was written up that day for stealing a used insulin syringe (Incident No. 2734566) in violation of

28 C.F.R.. § 541.3, Table 1, Code 219. Dkt. 29-1 at 15-16. The incident occurred at 5:00 p.m. and was described in the report as follows:

> [The inmate] did drop a Lancet in the sharps container to simulate the sound of a syringe being dropped. I did observe a portion of the safety sleeved in the inmate's left hand which is the hand away from this observer. Inmate was exiting the room door when confronted and the inmate quickly retreated and dropped the syringe in the sharps container.

*Id*. at 15. The report was delivered to Mr. Major the following morning. *Id*. at 15. At that time, an investigating BOP lieutenant advised him of his rights, and he stated that he understood his rights and the charges. *Id*. at 16. He stated that he did not try to steal the syringe, but was only playing a trick on Mr. Crosby, a staff member. *Id*. at 16.

Before the Unit Discipline Committee ("the UDC" or "the Committee"), Mr. Major stated, "It was an innocent prank, a joke and that's it. It [wasn't] suppose to go this far. It was only a joke. It was not intentional." *Id*. at 15. The Committee referred the charge to a Discipline Hearing Officer (DHO) for further hearing. *Id*. at 15. The Committee recommended that should he be found guilty, thirty days' loss of good conduct time among other sanctions would be appropriate. *Id*. at 15. Mr. Major received notice of the hearing and he was informed of his rights. *Id*. at 18, 20.

Mr. Major invoked his right to be represented at the disciplinary hearing by a staff member, Dr. Contino. *Id*. at 22. At the hearing before the DHO, his due process rights were again reviewed with him. *Id*. at 25. He admitted his guilt for trying take a syringe from health services, even though he maintained the position that he was merely playing a prank on Mr. Crosby. *Id*. at 24, 25. Dr. Contino stated that Mr. Major was "always appropriate" and she never had any problem with him. *Id*. at 25. Mr. Major did not call any witnesses. *Id*. at 18, 24.

The DHO found Mr. Major guilty of attempting to steal. *Id*. at 25. Mr. Major's defense of pranking was unpersuasive because "it is obvious [he was] trying to deceive Mr. Crosby" when he "dropp[ed] something in the box to make a simulation sound of a needle." *Id*. The DHO found the statement of staff member Crosby more credible and gave the following admonishment: "Stealing cannot and will not be tolerated in this environment as it creates more cost for the operation of the institution." *Id*. The DHO imposed 30 days' disciplinary segregation, six months' loss of phone privileges, and 27 days' disallowance and forfeiture of good conduct time. *Id*. at 7 ¶ 3, 25.

### *Appeals and Rehearing*

Mr. Major appealed the DHO ruling through appropriate administrative channels. Dkt. 29-1 at 28-30. He sought to have his BOP record expunged of this

incident and, at a minimum, corrected to reflect consistently the same number of days disallowed or forfeited. *Id*. at 29-30. He also took issue with the DHO's mistake of referring to Mr. Crosby as an officer when he was in fact a nurse. *Id*. at 29-30. The case was remanded for rehearing. *Id*. at 28. Remand was granted based on the inconsistency between the BOP's SENTRY computer database and the DHO report. *Id*. at 37.

After proper notice and advice of rights, Mr. Major declined to request any witnesses for the rehearing, only staff representation. *Id*. at 32, 36. At the rehearing in January 2016 before a DHO, he was again advised of his rights and indicated he understood his rights. *Id*. at 11 ¶ 17. When asked about the charge, Mr. Major denied that he "tried to take anything" and stated he had no recollection of making any contrary statement to "the UDC or the investigative lieutenant." *Id*. at 11 ¶ 20, 37. The DHO, Ms. Slater, found Mr. Major "less than truthful based on the statements you provided to the investigative lieutenant and the UDC" as well as to the first DHO. *Id*. at 37. She also found Mr. Crosby more credible – "[t]his staff member gains nothing by fabricating this incident and provides a more credible version of events than yours." *Id*. Sanctions of 30 days' disciplinary segregation (which was already served) and disallowance of 27 days' good conduct time were imposed. *Id*. at 11 ¶¶ 21, 22.

Mr. Major appealed the decision on rehearing through the administrative remedy process. *Id*. at 12 ¶ 23, 45-46. He claimed in pertinent part that the DHO report contained an inaccurate date and fabricated evidence, specifically a non-existent photo. *Id*. at 45-46. Upon receipt of the appeal, the regional office contacted Ms. Slater concerning the date and photo in her DHO report. *Id*. at 44. According to Ms. Slater:

> In the response to the Petitioner's appeal, I was contacted by the Region in regard to the inaccurate information. I reviewed the DHO report, and saw I had inadvertently made two errors that I apparently overlooked during my preparation of the DHO Report. There was never a photo and I never considered a photo in reaching my decision that the Petitioner committed the prohibited act of Stealing Attempted in violation of Code 219A. I also corrected the error with regard to the date the incident report was given to the Petitioner. I amended the DHO Report to correct these errors . . .

*Id*. at 12 ¶ 24.[3] She filed an amended DHO report to correct the date and delete any reference to the nonexistent photo. *Id*. at 48. Mr. Major received the amended report on February 8, 2016. *Id*. at 12 ¶ 25. The appeal was denied. *Id*. at 44.

---

[3] Ms. Slater retired as of August 2017, and provided her statement in November 2017 as part of these proceedings before the case was transferred to this district court. Dkts. 12, 29 at 2 n. 1, 29-1 at 7 ¶ 1.

Mr. Major then appealed to the Office of General Counsel of the BOP. *Id*. at 42-43. He raised the same issues. *Id*. The appeal was denied for the reasons that 1) the DHO's decision was reasonable and supported by evidence, 2) no due process rights were violated during the disciplinary process, and 3) the sanctions imposed were commensurate to the severity level of the offense and supported by policy. *Id*. at 41.

## DISCIPLINARY ACTION

Mr. Major argues that he was denied due process because the evidence against him was fabricated in the rehearing and insufficient to support the overly severe disciplinary punishment he received. The fabrication refers to the "photo" noted on the DHO report after rehearing, which appeared there for the first time. Dkt. 29-1 at 36. He seeks both the return of the loss of time for good conduct and the permanent removal of the incident report from his BOP record.

### *The Conduct of the Disciplinary Proceedings*

Prison officials "implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules." *U.S. v. Mayes*, 158 F.3d 1215, 1224 (11th Cir. 1998). A staff member may write an incident report "when staff witness or reasonably believe" that an inmate committed a

prohibited act. 28 C.F.R. § 541.5(a). An investigation begins and the inmate receives a written incident report. 28 C.F.R. § 541.5(b). The investigator informs the inmate of his rights. *Id*.

Once the investigation is complete, the UDC reviews the incident report at which time the inmate is permitted to appear before the Committee. 28 C.F.R. § 541.7. "The UDC's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.7 (e). If the matter is referred to the DHO, the UDC advises the inmate of his rights at the upcoming DHO hearing. 28 C.F.R. § 541.7(g).

At the DHO hearing, the inmate is permitted to be represented by staff and to request witnesses to appear to testify on the inmate's behalf. 28 C.F.R. § 541.8. The DHO will consider all evidence presented and the decision "will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). The DHO is required to provide written findings explaining the basis for the disciplinary action and the inmate's right to appeal. *Wolff v. McDonnell*, 418 U.S. 539 (1974) (outlining specific hearing procedures to

satisfy standards of procedural due process in prison setting);[4] 28 C.F.R. § 541.8(h), (i).

The record shows that the BOP followed the inmate discipline regulations in this case. At all stages, Mr. Major was informed of his rights afforded under the prison disciplinary proceedings. He received written notice of the charge. Dkt. 29-1 at 15-16. He was informed of the charge and his right to remain silent at the investigative stage. *Id*. at 16. He was given adequate advance notice of his rights with respect to the ensuing disciplinary hearing, and was again reminded of those rights at the DHO hearing. *Id*. at 15, 18, 20. On remand, he was advised of his rights before the rehearing. *Id*. at 32, 36. He was given ample time to prepare for his defense at all stages, including the rehearing in January 2016. *Id*. at 18, 32, 36. A staff representative was present at both DHO hearings. His appeals were considered on the merits. Accordingly, the requirements of *Wolff* have been satisfied in the conduct of the disciplinary proceedings.

---

[4] "*Wolff* instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action." *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011).

## *The Sufficiency of the Evidence*

The standard for determining whether the DHO's decision satisfies due process requirements is whether "some evidence" supports the basis of the decision. *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1984). "The relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (emphasis added). In situations where the evidence is conflicting, the BOP regulations appear to go one step further and require that the DHO's decision be based on "the greater weight of the evidence." 28 C.F.R. § 541.8(f).

Federal courts are not tasked with retrying prison disciplinary actions. *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994). "No *de novo* review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by 'some facts' – 'whether any evidence at all' supports the action taken by prison officials." *Id.* (citation omitted). "The clear implication of *Hill* is that courts are not to conduct exhaustive reviews of findings of prison disciplinary panels." *O'Bryant v. Finch*, 637 F.3d 1207, 1214 (11th Cir. 2011).

The hearing officers, both initially and on rehearing, relied on existing evidence in finding the greater weight of the evidence supported the charge of

attempted stealing.  At the initial hearing, Mr. Major admitted that he tried to steal the syringe as part of a scheme to play a joke on the prison staff member, Mr. Crosby.  The first DHO did not find this excuse as a viable defense to attempted stealing, nor is there any authority that slipping a syringe up a sleeve – hidden from the joke's intended recipient's view – somehow nullifies the offending conduct.  On rehearing, the DHO reached the same conclusion.

Both hearing officers reviewed the evidence and found the reporting staff member more credible than Mr. Major.  The prank defense was not believed or, at the very least, not viewed as conduct capable of being condoned.  Mr. Major's shift in his recollection of the event between the initial hearing in 2015 and rehearing in 2016 only served to lessen his credibility.[5]

The Court finds at the very least that *Hills*' "some evidence" benchmark has been met.  The only conceivably conflicting evidence was Mr. Major's admission followed by his denial that he took the syringe.  Despite no other change in the evidence, both the initial decision and the decision on rehearing were based on the greater weight of the evidence.  Because the disciplinary process was sound and

---

[5] Although the main thrust of the petition focuses on the fabricated "photo," which was first mentioned in the DHO report issued after rehearing, the amended DHO report rectifies the fact that no photo was considered in the decision.  Ms Slater swore that there "was never a photo and I never considered a photo in reaching my decision" that Mr. Major committed attempted stealing.

the evidence against Mr. Major sufficient under either the "some" or the "greater weight" standard, the Court denies the petition.

It is therefore **ORDERED AND ADJUDGED** that the Petition for Writ of Habeas Corpus (Dkt. 1) pursuant to 28 U.S.C. § 2241 is denied. The Clerk is directed to enter judgment for Respondent, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** at Tampa, Florida, on September 4, 2019.

    s/*William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, *pro se*